**16 MAG    0138**

ORIGINAL

Approved: _____
            MATTHEW PODOLSKY
            Assistant United States Attorney

Before:    HONORABLE ANDREW J. PECK
            United States Magistrate Judge
            Southern District of New York



U.S. DISTRICT COURT
FILED
JAN 08 2016
S.D. OF N.Y.

------------------------------------- X
                                      :
UNITED STATES OF AMERICA              :    COMPLAINT  **DOC #___ ___**
                                      :
              -v.-                     :    Violations of 18 U.S.C.
                                      :    §§ 924(c), 1951, and 2
STEPHEN SMITH,                        :
    a/k/a "Genius,"                   :    COUNTY OF OFFENSE:
    a/k/a "Jamaica,"                  :    BRONX
                                      :
              Defendant.              :
                                      :
------------------------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        ELISABETH WHEELER, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE

        1.    From at least in or about August 2015 up to and including at least in or about December 2015, in the Southern District of New York and elsewhere, STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant, together with others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, SMITH agreed with others to commit gunpoint robberies of armored car operators in the Bronx, New York.

## Overt Acts

2.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about August 24, 2015, STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant, participated in a gunpoint robbery of an armored car operator in the vicinity of 1237 Jerome Avenue, Bronx, New York.

b.    On or about December 4, 2015, SMITH participated in a gunpoint robbery of an armored car operator in the vicinity of 1536 Westchester Avenue, Bronx, New York.

c.    On or about December 15, 2015, SMITH participated in a gunpoint robbery of an armored car operator in the vicinity of 1471 Westchester Avenue, Bronx, New York.

(Title 18, United States Code, Section 1951.)

## COUNT TWO

3.    From at least in or about August 2015 up to and including at least in or about December 2015, in the Southern District of New York and elsewhere, STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the Hobbs Act robbery conspiracy charged in Count One of this Complaint, knowingly did use and carry firearms, and, in furtherance of such crime, did possess firearms, and did aid and abet the use, carrying, and possession of firearms, which were discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4.    I have been involved in the investigation of this matter, and I base this affidavit on that experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts

2

that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.     Beginning in or about August 2015, the FBI commenced an investigation of three gunpoint robberies of operators of armored vehicles that occurred in the Bronx, New York, on or about August 24, 2015, (the "August 24 Robbery"), December 4, 2015 (the "December 4 Robbery"), and December 15, 2015 (the "December 15 Robbery").

6.     As part of this investigation, the FBI obtained and analyzed toll records for telephone numbers believed to be used by participants in the three gunpoint robberies discussed above.  As a result of that analysis, I and other FBI agents identified specific telephone numbers believed to be used by then-unknown members of the robbery conspiracy (the "Numbers of Interest") based on the frequency and timing of contacts between the Numbers of Interest and telephone numbers used by known members of the conspiracy.

### The August 24 Robbery

7.     On or about August 24, 2015, I and another FBI agent interviewed the operator of an armored vehicle for Rapid Armored Corporation ("Victim-1"), from whom I learned the following, among other things:

a.     On or about August 24, 2015, at approximately 10:40 a.m., Victim-1 was carrying bags containing approximately $42,000 in United States currency from the British Petroleum gas station located at 1237 Jerome Avenue, in the Bronx, New York (the "Gas Station") to an armored car ("Armored Car-1").

b.     As Victim-1 walked to Armored Car-1, two men who each appeared to be carrying a firearm approached Victim-1 and took the bags containing United States currency and Victim-1's firearm ("Firearm-1"), which was partially holstered on Victim-1's person.

### The December 4 Robbery

8.    On or about December 4, 2015, I interviewed the operator of an armored vehicle for Loomis Armored US ("Victim-2"), from whom I learned the following, among other things:

a.    On or about December 4, 2015, at approximately 11:00 a.m., Victim-2 was carrying bags containing coins worth approximately $265 from a Chase Bank branch located at 1536 Westchester Avenue, in the Bronx, New York (the "Bank") to an armored car ("Armored Car-2").

b.    As Victim-2 walked to the Armored Car, a black man approached him from behind, put him in a headlock, and pointed a gun at him.  Two other black men took from Victim-2 the bags containing United States currency and one of the three black men took Victim-2's firearm ("Firearm-2") from its holster on his person, and then all three fled on foot.

9.    On or about January 8, 2016, Victim-2 identified a photograph of STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant, from a photo array as one of the men who robbed him on or about December 4, 2015.

### The December 15 Robbery

10.    On or about December 15, 2015, I and another FBI agent interviewed the operator of an armored vehicle for Rapid Armored Corporation ("Victim-3"), from whom I learned the following, among other things:

a.    On or about December 15, 2015, at approximately 9:25 a.m., Victim-3 was carrying bags containing approximately $78,000 from EG Money Service Corp ("EG"), located at 1471 Westchester Avenue, in the Bronx, New York, to an armored car ("Armored Car-3").

b.    As Victim-3 walked to Armored Car-3, a black man ("Robber-1") approached Victim-3 from behind, pointed a firearm at Victim-3, and took the bags from Victim-3.  Victim-3 drew his firearm and fired several shots.  Robber-1 fired several shots at Victim-3, and Victim-3 returned fire.  Robber-1 then ran down Westchester Avenue on foot and escaped apprehension.

11.    On or about January 8, 2016, the driver of Armored Car-3 identified a photograph of STEPHEN SMITH, a/k/a

4

"Genius," a/k/a "Jamaica," the defendant, from a photo array as Robber-1.

<u>The Arrests of Certain Participants<br>in the Robbery Conspiracy</u>

12.    On or about January 7, 2016, between approximately 6:00 a.m. and approximately 6:45 a.m., three individuals ("CC-1," "CC-2," and "CC-3") were arrested on the basis of a criminal complaint charging them with conspiring to commit the August 24, December 4, and December 15 Robberies.

13.    After being advised of and waiving his *Miranda* rights, CC-3[1] told law enforcement officers the following, among other things:

a.    CC-3 helped plan the August 24 Robbery.

b.    STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant, participated in the August 24 Robbery.

14.    Pursuant to the arrests, the FBI obtained voluntary consent to search the cellphones belonging to CC-1 ("Cellphone-1"), CC-2 ("Cellphone-2"), and CC-3 ("Cellphone-3"), on which I observed the following:

a.    Cellphone-1 contains a contact entry under the name "Jamaica" for one of the Numbers of Interest ("Cellphone-4").

b.    Cellphone-2 contains a contact entry with no name for Cellphone-4.

c.    Cellphone-3 contains a contact entry under the name "Genius" for Cellphone-4.

15.    Based on information from databases frequently used by law enforcement, agents from the FBI were able to determine that Cellphone-4 is associated with STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant, and were able to identify two known addresses (the "Known Addresses") associated

---

[1] CC-3 has agreed to proactively assist law enforcement agents in this investigation in the hope of ultimately receiving a more lenient sentence in relation to those charges. CC-3's information has been corroborated by, among other things, telephone toll records and location data.

with SMITH.

16.   On or about January 7, 2016, agents from the FBI spoke to an individual ("Individual-1") at one of the Known Addresses ("Address-1").   Based on my conversations with those agents, I have learned the following, among other things:

a.   Individual-1 is the grandmother of STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant.

b.   SMITH lives at Address-1, which is Individual-1's residence.

c.   Individual-1's cellphone contains a contact entry under the name "Stephen Smith" for Cellphone-4.

17.   On or about January 7, 2016, Individual-1 gave agents from the FBI consent to search Address-1.   In an area identified by Individual-1 as where STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant, sleeps, agents from the FBI found approximately $5,800 in cash wrapped in rubber bands among articles of men's clothing.

18.   On or about January 7, 2016, agents from the FBI spoke to another individual ("Individual-2") at Address-1. Based on my conversations with those agents, I have learned the following, among other things:

a.   Individual-2 is the sister of STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant.

b.   On or about January 7, 2016, SMITH contacted Individual-2, telling her that he wished to meet outside because he did not want to see Individual-1.

c.   After receiving SMITH's message, Individual-2 met SMITH outside, in the vicinity of Address-1.

d.   SMITH told Individual-2, among other things, that he was in trouble regarding some robberies involving, among others, "Mike."[2]

19.   During the course of this investigation, FBI agents placed a court-authorized tracking device on a car

---

[2] CC-1's first name is Michael.

registered to CC-1 ("Car-1").  Data obtained from the tracking device installed on Car-1 and surveillance video recovered from security cameras indicates the following:

      a.    On the day of the December 4 Robbery, Car-1 drove within approximately one block of the Bank.

      b.    Shortly before the December 15 Robbery took place, Car-1 parked in front of another car ("Car-2") on the street and four individuals wearing hooded sweatshirts or jackets removed a license plate from the trunk of Car-1 and affixed it to the front of Car-2.

      c.    At approximately the time that the December 15 Robbery took place, Car-1 was driving in the vicinity of the December 15 Robbery.

      d.    On the day of the December 15 Robbery, approximately one block from the December 15 Robbery, one of the men who participated in the December 15 Robbery entered what appears to be Car-2.

      e.    Car-1 was in the vicinity of Address-1 on or about December 15, 2015, at approximately 11:28 a.m., shortly after the December 15 Robbery took place.

    20.    Based on records obtained by cellphone providers, I have learned the following, among other things:

      a.    On or about December 4, 2015, there were approximately thirty-three contacts between Cellphone-1 and Cellphone-4.

      b.    On or about December 15, 2015, there were approximately six contacts between Cellphone-1 and Cellphone-4.

      c.    Between on or about December 11 and on or about December 15, 2015, there were approximately twenty-three contacts between Cellphone-2 and Cellphone-4.

WHEREFORE, deponent prays that STEPHEN SMITH, a/k/a "Genius," a/k/a "Jamaica," the defendant, be imprisoned or bailed, as the case may be.

ELISABETH WHEELER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__th day of January, 2016

HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK